IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JOYCE M. DILKS,

    Plaintiff,

v.                               CIVIL NO.: WDQ-12-2758

4520 CORP., INC., et al.,

    Defendants.

MEMORANDUM OPINION

Joyce M. Dilks[1] sued 4520 Corp., Inc. ("4520 Corp.") and 35 other companies (collectively, the "Defendants") in the Circuit Court for Baltimore City, Maryland, for negligence and other claims related to Mr. Dilks's (the "Decedent") asbestos exposure and subsequent death. On September 14, 2012, Defendant Ingersoll-Rand Company ("Ingersoll-Rand") removed the action to this Court. Pending is Dilks's motion to remand and for attorney's fees and costs. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, Dilks's motion will be granted in part and denied in part.

I. Background

During "portions" of his working life as a reactor operator and supervisor, the Decedent "worked on board naval submarines

---

[1] Individually and as personal representative of the estate of Howard W. Dilks. ECF No. 2.

and in nuclear power facilities." Compl., ECF No. 2 ¶ 7.[2] The Decedent developed and died from asbestos-related malignant mesothelioma on February 4, 2010. *Id.* ¶¶ 11, 20.

On February 17, 2011, Dilks filed suit in the Circuit Court for Baltimore City, alleging strict liability, breach of warranty, negligence, aiding and abetting and conspiracy, and loss of consortium. *See generally* ECF No. 2 ¶¶ 6-34.[3] On March 29, 2011, Ingersoll-Rand was served with a copy of the complaint. Notice of Removal, ECF No. 1 ¶ 5. The complaint alleged that, while employed as a reactor operator and supervisor "on board naval submarines," the Decedent "used, worked with and/or was exposed to asbestos products that were manufactured, supplied and/or installed by the Defendants" between 1960 and 1985. ECF No. 2 ¶ 7.[4] The complaint further alleged that the Defendants had "individually and collectively failed and refused to warn the users of their products and those

---

[2] In 1968, the Decedent also was a utility worker for Jersey Central Power & Light ("Jersey Central Power") at "various residential and commercial sites" and in the Jersey Central Power powerhouse in Sayreville, New Jersey. ECF No. 2 ¶ 7.

[3] On July 1, 2011, Dilks amended the complaint to add as defendants Goulds Pump, Inc.; Hardie-Tynes Company, Inc.; Hardie-Tynes, LLC; Hardie-Tynes Manufacturing Company; and The Nash Engineering Company. ECF No. 72.

[4] The complaint further alleged that the Decedent "used, worked with and/or was exposed to asbestos products that were manufactured, supplied and/or installed by the Defendants" while working as a utility worker. ECF No. 2 ¶ 7.

who worked in close proximity thereto." *Id.* ¶ 9. The complaint noted that, "Plaintiff is not asserting a claim that at anytime [sic] any Defendant was acting under or on behalf of" the United States, or any of its officers or agencies. *Id.* ¶ 2.

On April 18, 2012, Dilks served unverified answers to the Defendants' Master Set of Interrogatories. ECF No. 156-3. In response to Interrogatory No. 88,[5] Dilks asserted that the Decedent had been exposed to "a variety of asbestos-containing products" while "a student, in training, and as a seaman in the U.S. Navy from 1960-1968," while "working as a utility worker at [Jersey Central Power] in Sayreville, New Jersey in 1968," and while working at the National Institute of Standards and Technology ("NIST") in Gaithersburg, Maryland from 1968 until his 2005 retirement. *Id.* at 28. In response to Interrogatory No. 89,[6] Dilks asserted that the Decedent had been exposed to asbestos-containing products "[w]hile performing duties and living aboard" the *USS Piper* SS409 and the *USS Von Steuben* SSBN-632 between 1963 and 1968. *Id.* at 29.

---

[5] Interrogatory No. 88 asked for, *inter alia*, employer information and a description of the asbestos-containing products to which Dilks claimed the Decedent's exposure. ECF No. 156-3 at 28.

[6] Interrogatory No. 89 asked for, *inter alia*, the name and type of any vessel aboard which the Decedent had allegedly been exposed to asbestos. *Id.* at 29.

On May 31, 2012, Dilks served unverified "First Supplemental and Amending Answers" to the Defendants' Master Set of Interrogatories. ECF No. 156-33. In a supplemental response to Interrogatory No. 13,[7] Dilks attached the Decedent's Official Military Personnel File. See ECF No. 156-34. The file confirmed the Decedent's time aboard the USS Piper and the USS Von Steuben. E.g., id. at 14, 22.

On July 16, 2012, Dilks filed a Notice of Discovery Deposition to depose the Decedent's Navy colleague Roy Parker on August 15, 2012. ECF No. 3-3; see also ECF No. 3-6 at 3 (8:6-7). On July 17, 2012, Dilks served a verified copy of the First Supplemental and Amending Answers. ECF No. 156-83. On August 6, 2012, Dilks served "Second Supplemental and Amending Answers." ECF No. 156-88. In her responses, Dilks asserted that the Decedent had been exposed to asbestos fiber from 1960 to 1980. Id. at 2. In response to Interrogatory No. 89, Dilks referred the Defendants to the Decedent's military records and directed the Defendants to "co-worker depositions to be taken in this matter," including the Parker deposition. Id. at 3.

On August 15, 2012, Dilks's counsel took Parker's deposition. ECF No. 3-6. Parker testified that he had served on board the USS Von Steuben with the Decedent from 1963 to 1967

---

[7] Interrogatory No. 13 asked whether any employer had sponsored, required, or made available physical examinations. ECF No. 156-33 at 2.

and that the Decedent had been nearby when work was done on Ingersoll-Rand Pumps.  *E.g.*, *id.* at 3, 11, 12 (8:2-21; 41:2-20; 42:15-20).

On September 14, 2012, Ingersoll-Rand removed the action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[8]  On October 9, 2012, Dilks moved to remand on the grounds of untimely removal and lack of jurisdiction.  ECF No. 189 ¶¶ 4-5.  On October 23, 2012, Ingersoll-Rand opposed the motion.  ECF No. 216.  On November 9, 2012, Dilks replied.  ECF No. 221.

II. Analysis

   A. Standard of Review

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending."  Under 28 U.S.C. § 1442(a), federal officers have an "independent jurisdictional right" to remove either a state civil action or criminal prosecution to federal court, "wholly apart" from §

---

[8] ECF No. 1 at 1.  28 U.S.C. § 1442(a)(1) authorizes removal of "civil action[s] . . . commenced in a State court . . . against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . relating to any act under color of such office."

5

1441. *Camero v. Kostos*, 253 F. Supp. 331, 335 (D.N.J. 1966) (internal quotation marks omitted).

"Although 28 U.S.C. § 1441 in general provides a defendant with a right to remove an action from state to federal court, the procedures for removal are set forth in § 1446." *Link Telecomms., Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 540 (D. Md. 2000). To remove a case, the defendant must file a notice of removal in the district court within 30 days after receiving the initial pleading. 28 U.S.C. § 1446(b)(1). If the case stated by the initial pleading is not removable, the defendant may remove within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).[9]

In determining when a defendant first had notice of grounds for removal, the Court must "rely on the face of the initial

---

[9] The 30-day removal limitation

> deprive[s] the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and . . . prevent[s] the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) (quoted in *Link*, 119 F. Supp. 2d at 544), *cert. denied*, 459 U.S. 821 (1982).

pleading and the documents exchanged in the case by the parties." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). The Court need not "inquire into the subjective knowledge of the defendant," but must consider only whether grounds for removal were "apparent within the four corners of the initial pleading or subsequent paper." *Id.* If details were "obscured or omitted" or "inadequately" stated, the defendant will not have been charged with knowledge of removability.[10] The Supreme Court has cautioned against a "narrow, grudging" interpretation of the federal officer removal statute, explaining that, "the validity of the defense of official immunity [should be] tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

---

[10] *Lovern*, 121 F.3d at 162 (citing *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 54 (3d Cir. 1993) ("[T]he relevant test is not what the defendants purportedly knew, but what these documents said."), *overruled on other grounds by Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) ("[T]he [30] day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face" the grounds for removal.)); *accord Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 (10th Cir. 2008) (stating that notice "ought to be unequivocal"; grounds for removal "should not be ambiguous" or "require[] an extensive investigation" (internal quotation marks omitted)); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (the defendant must "apply a reasonable amount of intelligence in ascertaining removability" but need not "look beyond the initial pleading for facts giving rise to removability").

B. Dilks's Motion to Remand

Dilks argues that her February 17, 2011 complaint displayed removability and, even if it did not, "any lingering question" as to removability was "dispelled" by April 18, 2012. ECF No. 189-1 at 6 (internal quotation marks omitted). Dilks concludes that removal was between 76 and 544 days late. ECF No. 189 ¶ 4. Ingersoll-Rand counters that the complaint "did not alert [it] to the possibility of removal, and in fact led [it] to reasonably believe that [Dilks] would not allege . . . exposure to asbestos under circumstances [giving] rise to federal jurisdiction." ECF No. 1 at 2 n.1. Ingersoll-Rand argues that the August 15, 2012 Parker deposition was the first paper from which it could ascertain that Dilks's claim involved "equipment specifically designed and manufactured in accordance with specifications by and under control of the Navy." ECF No. 216 at 5 (quoting 28 U.S.C. § 1446(b)(3)). Ingersoll-Rand concludes that its September 14, 2012 removal was timely. ECF No. 1.

*Harper v. Alltite Gaskets*, No. WDQ-12-0460, 2012 WL 1555043, at *1 (D. Md. Apr. 30, 2012) presented a similar, but distinguishable, situation; the Court will therefore consider the decision in some detail.

In *Harper*, this Court considered an asbestos complaint filed January 12, 2011, which alleged that Harper had been "employed at Key Highway Shipyard from 1966 to 1968 and from

1970 to 1972 as a welder at Eastern Stainless Steel Co. (Eastmet), from 1975 to 1993 and from 1993 to 1998 in construction as a day welder" (internal quotation marks omitted). On January 17, 2012, Harper indicated in an interrogatory response that: (1) he had worked on Key Highway Shipyard ships at various times between 1966 and 1973; (2) he had been exposed to dust while reconditioning two named Navy ships; and (3) during this time, the defendants' inspections of boiler turbines had caused the release of dust he inhaled. *Id.* (internal quotation marks omitted). Defendant General Electric ("GE") removed to this Court on February 14, 2012. *Id.* Harper moved to remand on untimeliness grounds. *Id.*

This Court denied the motion to remand. *Harper*, 2012 WL 1555043, at *2. The Court noted that federal officer removability was not "'apparent within the four corners'" of the complaint, which stated only that the plaintiff had worked intermittently at the Key Highway Shipyard and "did not mention the Navy or any ships that he had worked on." *Id.* & n.8 (quoting *Lovern*, 121 F.3d at 162). The Court rejected Harper's argument that GE "should have inferred" from the complaint that he "may well have worked on those ships." *Id.* (internal quotation marks omitted). Not until his January 17, 2012 interrogatory response did Harper allege "adequate facts" about federal officer removability, i.e., that he had "been exposed to dust on

9

the *USS Canisteo* and *USS Caloosahatchee*, Navy vessels for which GE had allegedly supplied equipment." *Id.* Because GE removed 28 days later, the removal was timely. *Id.*

Unlike in *Harper*, Dilks's complaint specifically alleged that the Decedent worked "on board naval submarines" as a reactor operator and supervisor and "used, worked with and/or was exposed to asbestos products that were manufactured, supplied, and/or installed by the Defendants." ECF No. 2 ¶ 7. Ingersoll-Rand objects that "the mere mentioning of a naval vessel in a complaint or discovery response, without more, is insufficient to trigger the 30-day removal period." ECF No. 216 at 8. None of the cases upon which Ingersoll-Rand relies for this proposition is binding.[11] Even if Dilks's complaint did not

---

[11] *See* ECF No. 216 at 8-10 (citing and quoting *Morgan v. Bill Vann Co.*, No. 11-0535-WS-B, 2011 WL 6056083, at *11-12 & n.17 (S.D. Ala. Dec. 6, 2011) (noting that the plaintiff's interrogatory responses reflected that he (1) "served as a machinist on specifically identified Navy and Coast Guard vessels" and (2) was exposed to asbestos "from a broad class of General Electric or Westinghouse 'motors, turbines, and motor generators'" but stating that the responses "do not draw any connection between the two and denying the plaintiff's motion to remand); *Contois v. Able Indus., Inc.*, 523 F. Supp. 2d 155, 158 (D. Conn. 2007) (plaintiff's "very general reference" to Navy service and subsequent identification of specific ships worked on did not provide adequate notice of removability); *Carter ex rel. Estate of Carter*, No. 3:02-CV-00009, 2002 WL 31682352, at *3 (E.D. Tex. June 27, 2002) ("While these answers indicate that Mr. Carter was alleging exposure to asbestos while on the job during his service in the Navy and explicitly stated the asbestos materials used during his service, nowhere was [defendant company] Westinghouse mentioned.").

provide adequate details about the Decedent's connection to Navy ships, such details were included in Dilks's April 18, 2012 interrogatory response that the Decedent's asbestos exposure occurred "[w]hile [he was] performing duties and living aboard" the *USS Piper* and the *USS Von Steuben* between 1963 and 1968. ECF No. 156-3 at 29.[12] Because the nexus between Dilks's claims and actions allegedly taken by Ingersoll-Rand under the

---

Ingersoll-Rand additionally argues that the complaint's efforts to preemptively defeat federal jurisdiction led it to "reasonably believe" that Dilks would not allege asbestos exposure under circumstances giving rise to such jurisdiction. ECF No. 1 at 2 n.1; *see also* ECF No. 216 at 11 & n.1. The Court does not find that Dilks's attempted disclaimer stripped all notice of removability otherwise apparent in the complaint. *Cf. generally In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 740-43 (E.D. Pa. 2011) (explaining that the federal officer removal statute favors removal and concluding that the plaintiff's disclaimer was ineffective because "[r]ecognizing this disclaimer would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court"). Moreover, as discussed above, removability was certainly ascertainable from Dilks's April interrogatory responses.

[12] Ingersoll-Rand objects that Dilks's discovery responses "did not describe any of the products at issue or contain any specific allegations regarding how or at which of the various worksites [the Decedent] was alleged to have been exposed to [its] products." ECF No. 1 ¶ 15; *see also* ECF No. 216 at 11, 12. Even if true, the argument is not persuasive. As the Fourth Circuit has recognized, an asbestos plaintiff is not expected to know and disclose minute details of exposure that occurred decades earlier. *Cf. Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1228 (4th Cir. 1986). Parker's deposition may have rendered removability *uncontestable*; the 30-day clock began ticking, however, when removability was first *ascertainable*. 28 U.S.C. § 1446(b)(3); *see also Link*, 119 F. Supp. 2d at 544.

direction of a federal officer was revealed--at the latest--on April 18, 2012, Ingersoll-Rand's September 14, 2012 removal was untimely.[13]

C. Dilks's Request for Attorney's Fees

Under 28 U.S.C. § 1447(c), the Court may require "payment of just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." The Court should award attorney's fees and costs[14] "only whe[n] the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Dilks contends that she is entitled to attorney's fees and costs because Ingersoll-Rand's removal was filed "without credible justification or excuse." ECF No. 189-1 at 15. Although the Court will conclude that removal was untimely, it does not find that Ingersoll-Rand was objectively unreasonable in arguing for removal. Dilks's request for attorney's fees and costs will be denied.

---

[13] *Cf. Hurley v. Alltite Gaskets*, No. GLR-12-0462, 2012 WL 4764901, at *2 (D. Md. Oct. 5, 2012); *In re Asbestos*, 770 F. Supp. 2d at 740.
   The Court need not consider whether 28 U.S.C. § 1442(a)(1) (federal officer removal) applies. *See Link*, 119 F. Supp. 2d at 542.

[14] The Tenth Circuit noted that the District Court in *Martin* had denied attorney's fees and costs, and affirmed the denial of both. *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1144 (10th Cir. 2004), *aff'd*, 546 U.S. 132 (2005).

III. Conclusion

For the reasons stated above, Dilks's motion to remand will be granted in part and denied in part.

_____12/18/12_____  
Date

_____  
William D. Quarles, Jr.  
United States District Judge